RECEIVED
IN MONROE, LA
JUL 1 - 2008
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| DAN A. WALKER, ET AL | CIVIL ACTION NO. 06-2167 |
| VERSUS | JUDGE ROBERT G. JAMES |
| UNITED STATES OF AMERICA | MAG. JUDGE KAREN L. HAYES |

RULING

Before the Court is Defendant United States' Motion for Partial Summary Judgment [Doc. No. 19], arguing that Plaintiffs, J.D. Frost Trucking Company and Bridgefield Casualty Insurance Co. (collectively "J.D. Frost"), must satisfy the requirements of 28 U.S.C. § 2675(b) before recovering damages in excess of the amount stated in J.D. Frost's prior administrative claim. J.D. Frost responds that the United States waived this argument when it failed to raise it as an affirmative defense in its Answer or as an issue in the pretrial order. For the foregoing reasons, the United States' Motion for Partial Summary Judgment is GRANTED. At trial, J.D. Frost cannot recover damages beyond $150,000 without establishing that those additional damages meet the requirements of Section 2675(b).

I.  FACTS AND PROCEDURAL HISTORY

On or about May 10, 2004, while walking on a broken metal ramp behind the United States Post Office in Rayville, Louisiana, Plaintiff Dan Walker ("Walker") fell, injuring his elbow, knee, and back.

1

J.D. Frost, Walker's employer, made payments to Walker under his workers' compensation policy, and on July 21, 2005, the United States Postal Service ("USPS") received a Standard Form 95 from J.D. Frost, seeking recovery for payments made under that policy. Almost ten months later, on May 1, 2006, Walker submitted his own claim to the USPS seeking $1,500,000 in damages and $100,000 in loss of consortium damages for his wife. On September 18, 2006, about a year after receiving J.D. Frost's original claim, the USPS received a supplemental claim from J.D. Frost increasing the amount of damages. The USPS denied both J.D. Frost's and Walker's claims.

On November 13, 2006, Walker filed a Complaint under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq., against the United States. About four months later, on March 20, 2007, J.D. Frost also filed a Complaint under the FTCA, seeking to recover payments made to Walker under his workers' compensation policy. On October 1, 2007, the Court granted the United States' Unopposed Motion to Consolidate the two cases. [Doc. No. 11].

Following a successful mediation on February 6, 2008, the United States settled Walker's claims against it. The United States, however, was unable to settle J.D. Frost's claims, because J.D. Frost and the United States dispute whether under 28 U.S.C. § 2675(b) J.D. Frost's damages are capped at the sum certain amount stated in its administrative claim.

This case presents three issues:

(1) Has the United States timely argued that J.D. Frost's damages are capped at the sum certain stated in its administrative claim?

(2) What is the sum certain of J.D. Frost's claim? And,

(3) Can J.D. Frost recover damages beyond that sum certain?

2

## II. LAW AND ANALYSIS

### A. Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the Court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. Topalian v. Ehrmann, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. Id. The moving party cannot satisfy its initial burden simply by setting forth conclusory statements that the nonmoving party has no evidence to prove its case. Ashe v. Corley, 992 F.2d 540, 543 (5th Cir. 1993).

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. Norman v. Apache Corp., 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. Anderson, 477 U.S. at 255.

## B. The Administrative Damages Cap in FTCA Cases

To establish jurisdiction under the FTCA, plaintiffs must first exhaust their administrative remedies by notifying the appropriate agency in writing within two years after the action accrues. 28 U.S.C. § 2401(b); Martinez v. United States, 728 F.2d 694, 695 (5th Cir. 1984). The plaintiff's notice must inform the agency of the "sum certain" amount of the claim. Martinez, 728 F.2d at 697; Wardsworth v. United States, 721 F.2d 503, 505 (5th Cir. 1983).

Once the plaintiff has brought its case to federal court, it will be precluded from recovering damages beyond the sum certain unless it can meet the special circumstances outlined in Section 2675(b). Martinez v. United States, 780 F.2d 525, 529 (5th Cir. 1986). Section 2675(b) states:

> Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.

28 U.S.C § 2675(b).

The United States asserts in its motion for summary judgment that J.D. Frost, absent a showing of newly discovered evidence or intervening facts, is now precluded under Section 2675(b) from recovering more than the sum certain.

J.D. Frost responds that the United States waived its right to raise this issue because it did not mention Section 2675 as an affirmative defense in its Answer and also because it did not mention the administrative cap in the pretrial order.

### 1.   Has the United States timely argued that J.D. Frost's damages are capped at the sum certain?

Rule 8(c) of the Federal Rules of Civil Procedure requires a party to set forth affirmative defenses in its answer. Fed. R. Civ. P. 8(c). Failure to raise a defense in an answer will usually result in a waiver. Simon v. United States, 891 F.2d 1154, 1157 (5th Cir. 1990) (citing Starcraft Co. v. C.J. Heck Co., 748 F.2d 982, 990 n.11 (5th Cir. 1984)).

In any case, failure to properly raise an affirmative defense in an answer need not result in a waiver, if the defense is otherwise raised in a pragmatically sufficient time and plaintiff is not prejudiced in its ability to respond. Simon, 891 F.2d at 1157 & 1159 (5th Cir. 1990); Lucas v. United States, 807 F.2d 414 (5th Cir. 1986); Allied Chem. Corp. v. Jack Mackay, d/b/a Mackay Farms, Ltd., 695 F.2d 854, 855-56 (5th Cir. 1983). "Central to requiring the pleading of affirmative defenses is the prevention of unfair surprise." Ingraham v. United States, 808 F.2d 1075, 1079 (5th Cir.1987). A plaintiff is not prejudiced if it can adequately confront and defend against the defense. Lucas v. United States, 807 F.2d 414, 418 (5th Cir. 1986); Theunissen v. GSI Group, 109 F.Supp.2d 505, 509 (N.D. Miss. 2000).

Furthermore, a defendant's failure to timely raise an argument is "especially excusable" if it is "not clearly settled" that the argument is actually an affirmative defense that the defendant is obligated to raise. See Johnson v. Johnson, 385 F.3d 503, 516 n.7 (5th Cir. 2004) (citing Foulk v. Charrier, 262 F.3d 687, 689 (8th Cir. 2001)). Conversely, when it is clear that the argument is an affirmative defense that should have been raised by the defendant, e.g., qualified immunity, courts are more likely to consider the argument waived if not timely raised. See, e.g., Pasco v.Knoblauch, No. 03-0179, 2008 WL 660430, *3 (N.D. Miss. March 6, 2008).

5

Here, the United States raised the issue in a pragmatically sufficient time and J.D. Frost has not been unfairly surprised or prejudiced in its ability to defend against that argument.

First, although the United States did not raise the requirements of Section 2675(b) in its Answer, it is undisputed that it raised the issue at mediation before trial. After the mediation, J.D. Frost had ample time to confront and defend against the argument because the trial was continued without date to allow the United States and J.D. Frost to brief whether J.D. Frost was subject to the requirements of Section 2675. In fact, in its response to the United States' brief, J.D. Frost has not claimed that it was prejudiced by the United States' failure to timely raise the requirements of Section 2675(b), but instead has argued that it can prove at trial that its damages qualify for an exception to the cap.

Second, J.D. Frost was placed on notice several months before the mediation that the United States would likely raise the administrative cap argument. Specifically, the United States raised the administrative cap as an affirmative defense in its Answer to Walker's claim, Walker v. United States, No. 06-2167 [Doc. No. 4 at p. 5], then, about five months before trial, filed an Unopposed Motion to Consolidate the Walker and J.D. Frost cases, noting that "[t]he issues in the two cases are identical." Walker v. United States, No. 06-2167 [Doc. No. 10] (emphasis added). The United States' unopposed motion, therefore, should have placed J.D. Frost on notice that the United States might be raising the same issues against J.D. Frost that it had raised against Walker.

Finally, the United States' failure to mention in its pleadings Section 2675(b)'s administrative cap on damages is "especially excusable" because it is not "clearly settled" whether that administrative cap is actually an affirmative defense that must be raised by

6

defendants. See Johnson, 385 F.3d at 516 n. 7. There is language in the Fifth Circuit case of Dickerson ex rel. Dickerson v. United States, 280 F.3d 470, 475 (5th Cir. 2002) indicating that Section 2675(b)'s cap on damages is an affirmative defense that can be waived if not raised by defendants. Id. (finding that pleading the administrative cap was enough to preserve it for appeal). But there is also language in Dickerson indicating that the requirements of Section 2675(b) are jurisdictional and need not always be raised by the defendants. Id. ("[I]n order for jurisdiction to exist in this case, an administrative claim had to be filed pursuant to 28 U.S.C. § 2675. The district court recognized this filing as an undisputed fact and therefore could examine the claim to determine the reach of its jurisdiction."). Furthermore, the Fifth Circuit has not consistently found that administrative caps are affirmative defenses that must be raised by defendants. Compare Giles v. Gen. Elec. Co., 245 F.3d 474, 492 n.32 (5th Cir. 2001) (noting that courts have "reasoned persuasively" that 42 U.S.C. § 1981a(b)(3)'s cap on damages is not an affirmative defense that can be waived); with Ingraham, 808 F.2d 1075 (5th Cir. 1987) ("conclud[ing] that the Texas statutory limit on medical malpractice damages is an affirmative defense"); Simon, 891 F.2d at 1157 (holding Louisiana statute limiting recovery in malpractice actions is an affirmative defense). In fact, other courts have indicated that the administrative cap of Section 2675(b) is not an affirmative defense that must be raised by defendants, but instead is a restriction on the courts jurisdiction. Hiatt v. United States, 910 F.2d 737, 741 n. 5 (11th Cir. 1990) ("[T]he district court is without jurisdiction to award damages in excess of the amount sought in the administrative claim absent special factors not present in this case.").[1] Thus, the

---

[1] See also Fairchild v. United States, 769 F.Supp. 964, 965 (W.D.La. 1991) (citing Section 2675(b) then stating "Noncompliance with this provision deprives a claimant of federal court jurisdiction over that claim."); 35A Am. Jur. 2d Federal Torts Claims Act § 136 (2008)

7

United States' failure to raise the administrative cap is particularly excusable because it is not clearly settled whether the cap is an affirmative defense.

J.D. Frost next argues that, even if the United States did not waive the administrative cap by failing to mention it in its Answer, the cap was still waived when it was omitted from the pretrial order.

A district court, within its discretion, may deem an issue waived if it is omitted from the pretrial order. See Flannery v. Carroll, 676 F.2d 126, 129 (5th Cir. 1982). "The pretrial order should be construed liberally so that it covers any of the possible legal or factual theories that might be embraced by its language." See Chaney v. New Orleans Public Facility Mgmt., Inc., No. 96-4023, 1997 WL 767685, at *1 (E.D. La. Dec. 10, 1997) (quoting WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 1527 (1990)). Even if a claim or issue is omitted, the trial court may modify the pretrial order to prevent a miscarriage of justice. Id. (citing Valley Ranch Dev. Co. Ltd. v. FDIC, 960 F.2d 550, 554 (5th Cir.1992)).

Although the United States did not raise the administrative cap in the joint pretrial order, it is undisputed that the United States and J.D. Frost, shortly after the pretrial conference, discussed the administrative cap at a mediation and filed a joint motion to continue the trial without date until that issue was resolved. When the Court resets this matter for trial, the parties will be required under a new scheduling order to submit a new pretrial order. Under these

---

("The government's failure to assert the statute limiting recovery, with certain exceptions, in a judicial action under the Federal Tort Claims Act, to the amount sought from the agency involved has been held not to preclude invocation of the provision by the court, itself."); c.f. Taylor v. United States, 821 F.2d 1428, 1433 (9th Cir.1987), cert. denied, 485 U.S. 992, 108 S.Ct. 1300, 99 L.Ed.2d 510 (1988) (California statutory limitation on noneconomic damages in actions based on professional negligence "is a limitation of damages rather than an affirmative defense.").

8

circumstances, the Court finds that it would be unjust to strictly construe the previous pretrial order and consider the administrative cap waived. See Chaney, 1997 WL 767685, at *1 ("While the pretrial order defines the boundaries of litigation at trial and on post-trial motions, 'total inflexibility is undesirable.'") (citing Fed. R. Civ. P. 16 advisory committee notes (1983 amend.)).

For these reasons, the Court finds that the United States has not waived the Section 2675(b) administrative cap. Therefore, under Section 2675(b), J.D. Frost, absent a showing of special circumstances, cannot recover damages beyond the sum certain unless it establishes that its damages were the result of newly discovered evidence or intervening facts.

### 2. What is the sum certain of J.D. Frost's damages?

In its brief, the United States argues that $150,000 constitutes the sum certain of J.D. Frost's claim.

When a plaintiff submits an administrative claim that indicates, with an asterisk or other qualifying language, that its damages will exceed a stated dollar amount, courts, in order to avoid dismissing the suit, will usually disregard or strike the asterisk or indefinite terms and consider only the stated dollar amount as the sum certain. See, e.g., Martinez, 728 F.2d at 697 n. 6 (5th Cir. 1984); Adams by Adams, 807 F.2d 318, 321 (2nd Cir. 1986); Erxleben v. United States, 668 F.2d 268, 273 (7th Cir. 1981) (striking the word "presently" from plaintiff's administrative claim and capping plaintiff's recovery at the dollar amount that followed the word), reasoning abrogated by Kanar v. United States, 118 F.3d 527, 531 (7th Cir. 1997); Indus. Indem. Co. v. United States, 504 F.Supp. 394, 397 (E.D. Cal. 1980) (ignoring asterisk that indicated "BENEFITS ARE CONTINUING," and capping plaintiff's recovery at the dollar amount that

9

preceded the asterisk); Fallon v. United States, 405 F.Supp. 1320 (D.C. Mont. 1976) (disregarding word "approximately" and treating dollar amount following that word as the sum certain). Similarly, when a plaintiff indicates in one place that its damages are for a particular dollar amount, but indicates in another place that its damages will exceed that amount, courts ignore the indefinite statement and consider the definite statement to be the sum certain. Corte-Real v. United States, 949 F.2d 484, 488 (1st Cir. 1991).

In Martinez, the Fifth Circuit considered whether plaintiff had sufficiently stated a sum certain when he stated in his administrative claim that his damages were "in excess of $100,000." The Fifth Circuit found that the plaintiff has reasonably stated a sum certain, but indicated in a footnote that plaintiff's damages, absent a showing of special circumstances, would be capped at $100,000. Martinez, 728 F.2d at 697 n. 6 (citing with approval Erxleben, 668 F.2d at 273).

In Industrial Indemnity Company, the plaintiff filed an administrative claim with the defendant using Standard Form 95. In the space providing for the amount of the claim, plaintiff entered the notation "$560.00*" The asterisk referred the claims officer to a notation at the bottom of the form that stated, "SUBSTANTIATION WILL BE SUPPLIED UPON REQUEST. COMPENSATION BENEFITS ARE CONTINUING AND WILL CONTINUE FOR AN INDEFINITE PERIOD OF TIME." The court concluded that "the federal agency is entitled to, and should, ignore the verbiage," then concluded that plaintiff, without establishing that its damages met the requirements of Section 2675(b), could not recover damages beyond the sum certain of $560.00.

In Corte-Real, the plaintiff filed an administrative form using Standard Form 95. In Section 10(B) of that form, which required the plaintiff to state the amount (in dollars) of his

claim attributable to personal injury, plaintiff wrote, "$100,000 plus because still treating and out of work." In response to Section 10(D), however, which asks for the total amount (in dollars) of the claim, plaintiff wrote "$100,000," without qualification. The court found that the district court "could and should have . . . stricken or disregarded as surplusage" the indefinite language and treated $100,000 as the sum certain.

In this case, J.D. Frost indicated with an asterisk that its damages would exceed $150,000; however, like the plaintiff in Corte-Real, J.D. Frost indicated in another place that its damages would not exceed $150,000. On May 1, 2006, Walker submitted a claim stating that J.D. Frost was seeking "[$]63,468.00*" in damages. The asterisk referenced a typed note at the bottom of the claim which indicated that it was the "[c]urrent amount, with benefits continuing." On or about September 18, 2006, the USPS received a supplemental claim from J.D. Frost increasing damages from the initial amount and stating that total damages were "$150,000*". This time the asterisk referred to a typed note at the bottom, which read "Benefits are continuing." Although the asterisk indicated that damages were indefinite, J.D. Frost's attorney, Donald Anzelmo, indicated that damages would not exceed $150,000. Attorney Anzelmo wrote a letter that accompanied the supplemental claim, stating "[t]his amount [$150,000] includes all medical benefits and wage benefits that have currently been paid to Mr. Dan Walker. This amount <u>also includes future expenses</u> that will be incurred as a result of his injuries." [Doc. No. 19-4, Exh. 2] (emphasis added).

Under these circumstances the Court will disregard the indefinite language in J.D. Frost's administrative claim and conclude that its damages, absent a showing of special circumstances, are capped at a sum certain of $150,000.

### 3. Can J.D. Frost recover damages beyond the sum certain of $150,000?

In response to the United States Motion for Summary Judgment, J.D. Frost argued that it can recover damages beyond $150,000 because there is a genuine issue as to whether its damages qualify for an exception under Section 2675(b).

Under Section 2675(b) a plaintiff is entitled to exceed the sum certain upon (1) newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency; or (2) upon allegation and proof of intervening facts relating to the amount of the claim. 28 U.S.C. § 2675(b).

The Fifth Circuit interprets these two exceptions together to establish a restrictive two-part test for determining whether a plaintiff can recover damages that exceed the sum certain. Dickerson, 280 F.3d 470, 476 (5th Cir.2002); see also D'Antoni v. Fed. Emergency Mng. Agenct, No. 07-615, 2008 WL 417701, at *5 (E.D. La. 2008). "[T]here is first a subjective test as to whether the specific injuries were known at the time the administrative complaint was made. Then there is an objective test as to whether the plaintiff could have made out its worst-case scenario based on the basic severity of the injuries that were known." Dickerson, 280 F.3d at 476 (citing Reilly v. United States, 863 F.2d 149, 172-73 (1st Cir. 1988)). "The second prong of the analysis has several requirements. First, the evidence must support the increase in the prayer over the administrative claim. Next, the allegedly newly discovered evidence or intervening facts must not have been reasonably capable of detection at the time the administrative claim was filed." Id.

J.D. Frost argues that it can meet this two-part test and supports its argument by providing a summary of Walker's medical history after the accident.

12

According to J.D. Frost, Walker's physicians were initially concerned only with a right knee injury and possible herniating of a thoracic disc in his spine. In June 2004, Walker underwent knee surgery. Eventually Walker also started experiencing problems in his lumbar and cervical spine, and in early July 2005 a cervical diskectomy was performed, merging two spinal disks.

On or about July 18, 2005, J.D. Frost submitted an administrative claim for damages. After this initial administrative claim was filed, Walker's physicians believed his cervical injury was stable and recommended only conservative treatment. A November 8, 2005 Functional Capacities Evaluation indicated that Walker could work at the sedentary light level. Similarly, a physician reviewing the FCE evaluation concluded that Walker had reached his maximum medical improvement and could return to his pre-accident employment. Although Walker's condition had stabilized, J.D. Frost, on or about September 12, 2006, submitted an amended complaint increasing the amount of damages, stating a sum certain of $150,000.

According to J.D. Frost's brief, after this supplemental claim was filed, Walker's condition changed "dramatically and unpredictably." Walker's physician, Dr. McHugh, recommended surgery on Walker's lumbar spine, which was performed in April 2007. Later Dr. Brown, an orthopedist, performed knee surgery. According to J.D. Frost, "[t]hese changes in condition resulted in a finding that, contrary to earlier belief, Mr. Walker was no longer employable in any capacity."

Despite J.D. Frost's summary of Walker's medical history, it has not cited to any evidence. J.D. Frost has attached no affidavits or exhibits to its brief, but instead has simply alleged that it can prove facts to support its assertions at trial.

Assuming J.D. Frost can support its allegations at trial, its damages may qualify for an exception under 2675(b). Specifically, the surgery on the lumbar spine is arguably unforeseen because, according to J.D. Frost, it was both on a different area of the back than the previous surgery and not recommended by Walker's doctor until after the supplemental claim was filed. This allegation, if true, may establish that the cost of the surgery is recoverable.

On the other hand, the cost of Walker's second knee surgery may not be recoverable. J.D. Frost apparently knew before filing its supplemental administrative claim that Walker had already undergone a previous knee surgery and therefore knew the basic severity of Walker's knee injury and could also have made out a worst case scenario based upon this known injury.

The Court, however, need not evaluate these issues because the United States at this point is apparently not moving for summary judgment on whether J.D. Frost can meet the requirements of Section 2675(b).

The United States' original motion for summary judgment indicated that it was seeking a ruling that Section 2675(b)'s requirements apply to J.D. Frost and J.D. Frost cannot meet those requirements. ("[T]he United States requests this Honorable Court to limit the damages which plaintiff can seek to the amount requested in the administrative proceedings ($150,000) pursuant to 28 U.S.C. § 2675(b)."). However, the United States' Reply brief indicated that it is seeking a ruling only that Section 2675(b)'s requirements apply to J.D. Frost and not a decision on whether J.D. Frost can meet those requirements. For example, the United States stated in its Reply brief that the "burden under 2675(b) does not rest with the United States, but rather is a burden to be borne by the plaintiffs." (emphasis added). Thus, the United States Reply Brief suggests that it believes J.D. Frost does not need to meet its burden in the instant motion for summary judgment

but that the burden is "to be borne" at a later date, e.g., at trial.

Because the United States is apparently not seeking a ruling on this issue, the Court will defer until the bench trial a decision on whether J.D. Frost's damages can meet the Fifth Circuit's test for proving damages beyond the sum certain.

## III. CONCLUSION

For the foregoing reasons, the United States' Motion for Partial Summary Judgment is GRANTED.

J.D. Frost, absent a showing of newly discovered evidence or intervening facts, is precluded under Section 2675(b) from recovering damages above the sum certain of $150,000.

MONROE, LOUISIANA, this __30__ day of __June__, 2008.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE